**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **JOSE JIMENEZ** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 1:09-cv-00416 MCA DJS** |
| | § | |
| **SMITH & NEPHEW,  INC.** | § | |
| **Defendants.** | § | |

**PLAINTIFF JOSE JIMENEZ' MEMORANDUM OF LAW
IN RESPONSE TO
DEFENDANT'S MOTION FOR ENTRY OF PROTECTIVE ORDER**

Plaintiff asks the Court to DENY Defendant's request for entry of Defendant's proposed *Protective Order of Confidentiality,* (filed as Document 23-1 in this case), as Defendant has not met the Fed. R. Civ. P. 26(c) requirement of showing good cause for the order as proposed.  Defendant pleads prematurely prior to receipt of discovery requests, without specificity or clarity as to the 'trade secrets" it seeks to protect, and without a good faith effort to resolve this issue between counsel without the need for court intervention.  In the alternative, Plaintiff proposes the *Protective Order* attached hereto as Exhibit A.

**I. BACKGROUND**

1.      Plaintiff Jose Jimenez is the recipient of a knee prosthesis implant which failed, requiring revision surgery, and causing permanent and significant damages.

2.      Defendant Smith & Nephew, Inc. is in the business of designing, manufacturing and marketing prosthetic devices, including the orthopedic prosthetic knee components which were

1

implanted in the body of Plaintiff Jose Jimenez.

3.      Plaintiff seeks to recover in this lawsuit the damages incurred as a direct and proximate result of Defendant's negligent or defect design, manufacture and/or marketing of the its knee prostheses, including any or all of their component parts, implanted into the body of Plaintiff Jose Jimenez.

4.      Defendant, seeking to protect any trade secret or other confidential information which may be sought through discovery, has requested entry of a protective order pursuant to Fed. R. Civ. P. 26(c)(1)(G).   After limited preliminary discussion between counsel for the parties on the issue, without conclusion or refusal to negotiate, Defendant filed a *Motion for Entry of Protective Order of Confidentiality,* proposing an order which  is overly broad, giving Defendant the sole discretion in determining what information will be deemed confidential, allowing redaction prior to a determination of the discoverability of such information, and which contains no provisions for the sharing of discovery information among litigants similarly situated, with current or potential cases against this defendant for same or substantially similar failures of the same or substantially similar knee prostheses.

5.       Defendant contends that in response to Defendant's initial e-mail proposal of a draft confidentiality order, Plaintiff's counsel stated "only that she could not agree to Defendant's proposed form of order because it did not contain a "sharing agreement".  (See Document 23, Pg.2, Para. 2)  In fact, Plaintiff's primary response regarding the sharing agreement  in no way limited its objections to Defendant's proposed order to that one issue or in any way waived the objections

Plaintiff has to Defendant's self-serving, initial proposal.   The Defendant's *Protective Order of Confidentiality*, as proposed, puts an undue burden upon Plaintiff in the management of information in this case because it requires limitations far in excess of what is needed to protect the interests set forth in Defendant's argument.

6.     Defendant has not yet served discovery upon Defendant, and therefore it is difficult to predict and impose limitations upon information sought by Plaintiff in the future.     The parties have had preliminary discussions regarding the need for a stipulated agreement on the confidentiality of certain information contained in probable discovery responses.   Such negotiations have been ongoing and Plaintiff believes the request for Court intervention in this matter is premature and unwarranted.   Defendant failed to provide with its motion any certification that the movant has in good faith conferred with Plaintiff in an effort to resolve the dispute without court action and has been unable to agree, as specifically required by Fed. R. Civ. P. 26(c)(1).

7.     Plaintiff is not opposed to a  Protective Order regarding discovery which  is fair to both parties, and urges Defendant's engagement in proper negotiation of this issue so that discovery may proceed, and in seeking agreement on the issue without the need for court intervention, proposes an alternative agreement for consideration.   Plaintiff objects, however, to the Defendant's proposed *Protective Order of Confidentiality,* as drafted, and hereby requests the Court DENY Defendant's request, and, in the alternative, enter the proposal set forth by Plaintiff and attached hereto as Exhibit A.

3

## II. ARGUMENT AND AUTHORITIES

8.       Defendant's proposed *Protective Order of Confidentiality* is inappropriate in several ways: A) in presenting prematurely, providing no certificate of conference, prior to Plaintiff serving discovery upon Defendant; B) failing to identify material to be protected with any reasonable particularity or specificity; C) in failing to show requisite good cause for the broad extent of the protection requested by Defendant, granting Defendant the only say in determining which responsive material should be deemed confidential or redacted; and D) in prohibiting of fair sharing of information with claimants in other similar actions, which is against public policy.

### A. *Motion is Premature & Fails to Comply With* Fed. R. Civ. P. 26(c)(1)

9.       Plaintiff has not served discovery requests upon Defendant, therefore its motion is premature.   As no discovery has been served, *Defendant's Proposed Protective Order of Confidentiality* makes a blanket request for protection, without identifying the material or information which Defendant claims is confidential, and seeks to protect by nondisclosure, redaction, or other limitation and, thus, is overly broad and unfair.   Before asking the court to resolve claims of of privilege or objection, and before filing a motion for protective order or motion to compel, the parties <u>must</u> in good faith confer or attempt to confer in an effort to resolve the dispute.   Fed. R. Civ. P. 26(c)(1);   See also Fed R. Civ. P. 37(a)(1).   "Confer" means to make a genuine effort to resolve the dispute by determining what the requesting party is actually seeking, what the responding party is reasonably capable of producing that is responsive to the request, and what specific genuine issues cannot be resolved without judicial intervention.   *Cotracom Commodity Trading Co. V. Seabord*

4

*Corp.,* 189 F.R.D. 456, 459 (D. Kan. 1999)   This would seemingly require discovery requests to have actually been propounded prior to the seeking of the confidentiality agreement.   However, Plaintiff is not opposed to making a good faith effort to address any conceivable issues which may arise in its discovery, but Defendant must be willing to negotiate.   Instead, Defendant makes sweeping statements implying Plaintiff's failure to cooperate.   The invalidity of such implications is evidenced by Defendant's omission of the certificate of conference from its motion.   The conferencing requirement is meant to encourage the parties to communicate on discovery disputes and conserve judicial resources.   *Taylor v. Florida Atl. Univ.,* 132 F.R.D. 304, 305 (S.D. Fla. 1990)**.**  **The Court can deny the motion if the movant has not conferred properly**.   *Kidwiler v. Progressive Paloverde Ins. Co.,*  192 F.R.D. 193, 196-7 (N.D. W. Va. 2000).

### *B. Defendant Fails to Specify Information Which Should Be Protected*

10.   Defendant's *Motion for Entry of Protective Order* (Document 23) contains no Certificate of Conference confirming the parties cannot resolve the issue.   Defendant has not made a good faith effort to negotiate the terms of the confidentiality agreement, and Plaintiff has certainly not refused to confer altogether.   Counsel are expected to cooperate with each other in conducting discovery, clarifying the issues and preparing for trial, in strict compliance with the mandates set forth in *Dondi Properties Corp. V. Commerce Savs. And Loan Ass'n,* 121 F.R.D. 284 (N.D. Tex. 1988) (en banc) (per curiam).    *Defendant's Proposed Stipulated Protective Order* places strict limitations on the handling of **all** "confidential and sensitive financial data, technical information, trade secrets, proprietary or nonpublic commercial information, information involving privacy

interests and other commercially and/or competitively sensitive information of a nonpublic nature, or received on a confidential basis"  Protection of all information in broadly described categories simply because *something* in those categories *may* give a competitor an advantage is not proper. Defendant must provide a fair description of the material which is truly "trade secret" and good cause for its contention that failure to protect it will cause harm.  A party asserting good cause bears the burden, **for each particular document it seeks to protect**, of showing that **specific** prejudice or harm will result if no protective order is granted.  *Foltz v. State Farm Mut. Auto. Ins. Co.,*  331 F.3d 1122, 1130 (9th Cir.2003) (emph.added).   Injury must be shown **"with specificity"**.  *Pearson v. Miller* 211 F.3d 57, 72-73 (3d Cir. 2000)(emph. added).  Defendant's identification need not be overly specific and burdensome to Defendants, but should adequately disclose the particular information which requires considerably careful handling, as this is an incredible burden to Plaintiffs, which cannot be taken for granted.  Defendant's proposed *Protective Order of Confidentiality,* which is not limited in scope in any way, unfairly burdens Plaintiffs with the time and expense associated with special handling of each and every piece of information discovered. The *Protective Order* proposed by Plaintiff more properly addresses this issue, protecting only materials fairly deemed confidential to avoid dissemination to competitors directly or through the public at large will serve the interests of the parties by expediting the flow of discovery and insuring that confidential materials are protected. Defendant's Proposed *Protective Order of Confidentiality*, conversely, will only serve Defendant's interests, and will cause undue prejudice to Plaintiffs.

### C. Defendant Does Not Show Good Cause for its Broad Order

6

11.     Fed. R. Civ. P. 26(c)(1)(G) provides that protective orders may be issued for 'good cause' to protect a party from revealing trade secret or other confidential research, development or commercial information.   As the party seeking the protective order, Defendant has the burden of demonstrating good cause for the entry of any protective or confidentiality measure that it seeks. E.g., *Trujillo v . Board of Ed. Of Albuquerque Pub. Schs.,* Nos. 02-1146 JB/LFG, 2007 WL 1306560, *3 (D.N.M. Mar. 12, 2007).   Protection of trade secrets is the sole reason asserted by Defendant for a protective order in this case.   While Plaintiff is willing to consider the proposition that a confidentiality agreement regarding the handling of proprietary corporate information will be needed in this case, Defendant has not met his burden of showing 'good cause' for its overreaching and self-entitling proposed *Protective Order of Confidentiality*.  The only protection supported by Defendant's pleading is that available under Fed. R. Civ. P. 26(c)(1)(G), the limitation of distribution of trade secrets.   Plaintiff is not opposed to a reasonable agreement precluding distribution of proprietary corporate information to competitors.   Defendant's proposal is not reasonable.

12.     Motivation for a limiting burdensome protective order very likely extends beyond Defendant's sole argument that trade secrets should be protected from competitors.  It appears that Defendant's proposal is clearly and carefully drafted in such a manner as to give Defendant unfair control over discovery, allowing it to hide pertinent information on its failed products which will lead to the discovery of vital evidence in this and many other cases.  Regardless of Defendant's motivation, specific rules and case law govern the use of protective orders in litigation, and must be followed.

7

13.   Defendant's  proposed *Protective Order of Confidentiality* grants Defendant the sole authority to determine what information will be deemed confidential, and allows Defendant to redact any information it wishes from responsive documents prior to their production.  This is not proper, as such authority could be used in such a manner as to hide pertinent information which will lead to discovery of vital evidence in this case.  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not justify a protective order.  *In re Exxon Valdez* 1990 U.S. Dist. Lexis 7999 (D. Alaska, 1990).  *Cippolone v. Liggett Group, Inc.,*  785 F.2d 1108 (3rd Cir. 1986)  A showing of good cause requires specific demonstrations of fact supported by affidavits and concrete examples rather than by conclusory allegations of potential harm.  *Deford v. Schmid Products Co.,* 120 F.R.D. 648, 653 (D. Md. 1987); *Avirgan v. Hull* 118 F. R.D. 257, 261-62 (D.D.C. 1987).  The party resisting discovery must establish that information sought is a trade secret and that disclosure of that secret would be harmful to its business.  Defendant cannot unilaterally decide what is and is not to be considered confidential and protected.  What constitutes a trade secret is a question of fact for the trial court.  *Xantrex Tech. Inc. V. Advanced Energy Indus.,* 2008 U.S. Dist. LEXIS 41206 (D. Colo., 2008).  When trade secret privilege is asserted as the basis for resisting production, the **trial court** must determine whether the requested production constitutes a trade secret.  *In re Continental Gen. Tire,* 979 S.W.2d 609 (Tex. 1998) (emph. added)  As trade secret privilege is the **only** basis asserted by Defendant in seeking protection, it is important that any confidentiality agreement entered present a clear and fair means by which materials be designated as "trade secrets", providing for final determination by the court if a dispute arises.   The agreement cannot allow a

8

party to take such authority from the court for itself.   A movant must articulate "a particular and specific demonstration of fact as distinguished from stereotyped conclusory statements."   *United States v. Garrett,* 571 F.2d 1323, 1326, n.3  (5th Cir. 1978)  A ruling on disclosure (or limitations thereupon) depends upon a weighing of the competing interests involved against the background of the total situation.   *Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993, 999 (10th Cir. 1965) Sweeping predictions of injury and "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,"  do not justify a protective order.   *Cipollone v. Liggett Group, Inc.,*  785 F. 2d 1108, 1121 (3d Cir. 1986).    Courts have not given trade secrets automatic and complete immunity against disclosure, but weigh each claim to privacy against the need for disclosure, frequently affording a limited protection only.   *Federal Open Mkt. Comm.. v. Merrill* 443 U.S. 340, 362, 99 S.Ct. 2800 (1979), at HN8.   Defendant's *Motion* does not specifically plead the categories of information it seeks to protect, the reasoning behind the alleged need for protection, or any other particular facts showing good cause for the order.   The Protective Order proposed by Plaintiff is more properly specific in terms of procedure for determination of confidentiality of discovery responses, and the protocols for the protection of confidential information.

### C.  Limited Sharing is Warranted

14.    Plaintiff contends that the knee implant product at issue in this case failed as a result of a defect in the Defendant's design, manufacture and marketing processes. Therefore, Plaintiff will seek discovery of information on the design, manufacture and marketing of Plaintiff's prosthesis in an effort to prove its theories of liability. Plaintiff will also seek discovery of information on a knee

implant with the same model name, and having  a substantially similar design and composition as
the prosthesis implanted into Plaintiff.   A substantially similar implant manufactured by the
Defendant was recalled by Defendant due to an unacceptable rate of failure from unexplained
loosening, which is the same problem suffered by Plaintiff.   The product was removed from the
market and extensively tested to properly place liability and in order to qualify for insurance
coverage for the claims of patients with such failures.   The products are substantially similar.
Therefore, discovery of information related to the history of the recalled prostheses and the processes
for their design, manufacture and marketing by Defendant is pertinent to Plaintiff's case, and will
very likely lead to the discovery of admissible evidence regarding the failure of Plaintiff's prosthesis.
Discovery on these matters is highly relevant to this and  numerous substantially similar cases
against Defendant, therefore a limited sharing agreement within the confidentiality agreement would
be beneficial to all parties.   Plaintiff's proposed *Protective Order,* attached hereto as Exhibit A,
provides for the fair and just discovery of such information, with very specific limitations which will,
if followed, adequately protect the interest, however unspecified, which Plaintiff understands
Defendant to be seeking to protect.   It is well-established that evidence of similar incidents may be
relevant to prove a defendant's notice of defects, the defendant's ability to correct known defects,
the mangitude of the danger, the product's lack of safety for intended uses or causation.  *Olson v.*
*Ford Motor Co.,*  410 F. Supp. 2d 855 (D.N.D. 2006).

      15.   In support of its contention that no sharing agreement whatsoever should be allowed,
we are directed by Defendant to a complicated, specific case argued by Defense counsel before this

court in 2007, *Bertetto v. Novartis AG, et al,* No. Civ 06-1136.  In *Bertetto,* this court's magistrate

entered a protective order which allowed for sharing of protected discovery information with any

attorney for claimants in other litigation alleging personal injury from use of the same drug.  Because

Defendant failed to show that the sharing provision harmed or prejudiced them in any manner, as

the sharing agreement afforded access only to identified persons who would gain access to this same

information by way of discovery in other pending lawsuits, the court allowed it.  The magistrate held

that a sharing order "permits an efficient and effective manner to share discovery without further

judicial intervention and thus comports with Fed. R. Civ. P. 1, which states that the Rules are to be

construed to secure the just, speedy and inexpensive determination of every action", opining  that

when there is no prejudice to the substantial rights of the party opposing disclosure, collateral

litigants should have access to confidential materials to promote judicial efficiency, citing *Nuclear*

*Corp. V. Cranfod,*  905 F.2d 1424, 1428 (10th Cir. 1990), wherein the tenth circuit set forth its

opinion as to sharing agreements:      "where an appropriate modification of a protective order can

place private litigants in a position they would otherwise reach only after a repetition of another's

discovery, such modification can be denied only where it would tangibly prejudice substantial rights

of the party opposing modification.  "A bona fide litigant is entitled to his day in court.   That the

expense of litigation deters many from exercising that right is no reason to erect gratuitous

roadblocks in the ath of a litigant who finds a trail blazed by another.  *Wilk v. American Medical*

*Ass'n.,*  635 F. 2d 1295 (7th Cir. Ill. 1980).   The *United* court, following *Wilk* reasoned that "any

legitimate interest the defendants have in continued secrecy as against the public at large can be

accommodated by placing parties in similar cases under the restrictions on use and disclosure contained in the original protective order."

16.     After the entry of the original protective order with sharing agreement in *Bertetto*, the defendant in that case, led by Thomas Outler, counsel for defendant in this case, objected to the breadth of the discovery sharing provision included therein.  Mr. Outler argued that the order, as written, was too broad to enable defendant to protect its confidential business information from those who do not have the right to access it.  The *Bertetto* defendant drug manufacturer complained that the protective order, as entered, allowed distribution to collateral litigants without Court supervision. Defendant's counter proposal was overly broad, requesting that the sharing agreement allow collateral litigants with a current case against Defendant access to relevant discovery responses only after application to the court , making a preliminary showing of relevance and agreeing to be subject to the confidentiality agreement or, alternatively, permitting collateral litigants to apply for access to the discovery materials by writing directly to the Defendant.

17.     This court, in overruling the sharing agreement provision of the protective order entered in *Bertetto*, explained:

A)     United held that a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation.

B)     Questions of discoverability in the collateral litigation of the materials discovered in the present litigation are, of course, for the collateral courts.

C)     If defendant in the present litigation were a party to a

collateral suit, it would have both the interest and standing to raise in those courts any relevancy or privilege objections to the production of any materials. And

D)     A sharing provision would almost inevitably force Defendants to seek a ruling from a collateral court to contest the scope of discovery, assuming that it was not too late because the confidential information had already been passed to the collateral plaintiff by the Plaintiffs' attorneys in this case.

18.     In analyzing case law regarding sharing agreements, a common theme emerges: avoiding the wastefulness of duplicating discovery already made, easing the tasks of courts and litigants, and speeding up an otherwise lengthy process.   Tenth Circuit opinions subsequent to *United*, continue to allow sharing agreements.   In placing the burden upon the party resisting the sharing agreement to show that production of relevant documents to litigants in a collateral case prejudices its substantial rights, *Ross v. Pioneer Life Ins. Co.,* 2007 U.S. Dist. LEXIS 97263 (10th Cir., 2007), explains how the Tenth Circuit adopted the following language from the Seventh Circuit and determined a balancing of the interest in promoting efficiency in the discovery process through the entry of a protective order against the efficiency of avoiding duplication of discovery performed in another case:  "Where a...protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.  Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order" *United,* Id., at 1428(quoting *Wilk,* id., at 1299).   Prior to balancing the interests of the parties under the standard

13

articulated by the 10th circuit and other courts, it must <u>first</u> be determined whether the party opposing the sharing agreement have demonstrated that they would suffer prejudice if the sharing agreement were allowed.   Defendant herein has failed not only to show prejudice to its substantial rights, but the nature of the confidentiality of discovery responses which have not even been requested, and thus a sharing order is not prohibited.

19.    The dilemma set forth in this court's *Memorandum Opinion and Order* in Bertetto, that of the potential for conflicting rulings between the districts if a sharing order is allowed, was specifically addressed in *Williams v. Spring/United Mgmt. Co.,* 2006 U.S. Dist LEXIS 18563 (10th Cir., 2006), which held that a sharing order does not require a defendant or even the plaintiff to produce materials to plaintiffs in collateral cases, it does not suggest that collateral litigants are entitled to discovery of all documents produced in the case in which the order is entered, nor does it impose any affirmative requirements on the parties relating to discovery in a collateral case.  A sharing order simply permits plaintiffs in one case, should they choose to do so, to provide to plaintiffs in a collateral case any and all materials received in the first plaintiffs' formal discovery process.  It does not preclude a defendant from refusing to produce protected materials as a matter of record in the collateral case, and, of course, the collateral court would resolve any issues of privilege, relevance and other objections asserted by the defendant in the collateral case.  Similarly, a sharing order does not preclude a defendant from opposing a collateral plaintiff's use in motion practice or at trial, of materials received from the first plaintiffs, and again, the collateral court would resolve any issues regarding admissibility of such materials.

20.     The presumption of open discovery should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues because access in such cases materially eases the tasks. *Wilk v. American Medical Ass'n* 635 F.2d 1295, 1299 (7th Cir. 1980). Without the benefit of first hand knowledge of the argument presented by Mr. Outler to this Court in *Bertetto,* Plaintiff respectfully seeks a different ruling by this Court in the present case. The reasoning of this honorable Court in *Bertetto* likely was influenced by oral argument to which Plaintiff in this case was not privy. It is not disputed that the courts favor appropriate sharing agreements as a matter of public policy. A protective order prohibiting discovery sharing can make other litigation more difficult, costly and less efficient. There may be similar claimants who do not have the resources to pursue the thorough investigation which these cases require. To require that each and every plaintiff go through the identical long and expensive process would be ludicrous. Even from the point of view of the defendants (thought they resist), it would seem that they would benefit by avoiding repetition of the same discovery in each and every case. The Federal Rules do not foreclose the collaborative use of discovery. *Cipollone v. Liggett Group, Inc.* 113 F.R.D. 86, 87 (D.N.J. 1986) cert den'd. The facts of this case support a sharing order similar to that upheld in *Adams v. Sunbeam Prods.,* 2003 U.S. Dist. LEXIS 27354 (10th Cir. 2003), quoting *Ward v. Ford Motor Co.,* 93 F.R.D. 579 (D. Colo. 1982) which eloquently held: "In this era of ever expanding litigation expense, any means of minimizing discovery costs improves the accesability and economy of justice. If, as asserted, a single design defect is the cause of hundreds of injuries, then the evidentiary facts to prove it must be identical, or nearly so, in all the cases. Each plaintiff should not

15

have to undertake to discovery anew the basic evidence that the other plaintiffs have uncovered.  To

so require would be tantamount to holding that each litigant who wishes to ride a taxi to court must

undertake the expense of inventing the wheel.  Efficient administration of justice requires that courts

encourage, not hamstring, information exchanges such as that here involved."  When the claims

asserted in collateral litigation shares many issues regarding design and manufacture of products, the

efficient conduct of discovery in such cases can best be completed by permitting the use of protected

documents from prior cases as if those documents had been produced in this litigation.  Of course,

all such use will be subject to the requirements of any protective orders from prior cases.  *Adams,*

Id., at *12.

       21.     The 10th Circuit in *Adams* continued: "The mechanics of managing these protected

documents must be addressed in a protective order applicable to the present cases."  The issue raised

in Defendant's motion for entry of protective order of confidentiality, that is, Defendant's concerns

that without knowledge of how or with whom its documents are shared, is susceptible to easy

resolution: First, any collateral plaintiff receiving a copy of Defendant's confidential information

shall sign a protective agreement themselves, prohibiting them from disseminating the information.

Second, the protective order will specifically prohibit dissemination to Defendant's competitors, and

finally, Any collateral plaintiff seeking to utilize the discovery for their own purposes shall be

required to seek leave of the court before whom the collateral matter is pending, and that court can

resolve any objections based upon relevance or otherwise. *Cippolone,* Id., at 91.

## **CONCLUSION**

_____22.     The key issue before this court is whether the protective order sought by Defendant should be limited in scope, requiring fair identification of items protected, and should bar collateral litigants from gaining access to discovery already conducted.   Should the court allow a sharing agreement, such as that reasonably included in the *Protective Order* proposed by Plaintiff, Defendant, as many other litigants which have been subjected to such agreements in all of the circuit courts, can and will have protection from dissemination of any information deemed confidential to its competitors.   As in other circuit court cases, after the decision is made allowing a sharing agreement, disputes over the ultimate discoverability of specific materials covered by the protective order must be resolved by the collateral courts.   *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir., 2003) Allowing the parties to the collateral litigation to raise specific relevance and privilege objections to the production of any otherwise properly protected materials in the collateral courts further serves to prevent the subversions of limitations on discovery in the collateral proceedings.  These procedures also preserve the proper role of each of the courts involved: the court responsible for the sharing agreement eliminates the potential for duplicative discovery, while the collateral courts may freely control the discovery processes in the controversies before them without running up against the order of another court.  *Id.*  Privacy interest may be protected even if limited disclosure in collateral litigation is allowed, because the court may place collateral litigants under the same restriction on use and disclosure contained in the original protective order.  *Bradley Trust v. Zenith Cappital LLC,*  2006 U.S. Dist. LEXIS 21671 (9th Cir. 2006).

17

23.     Defendant's *Proposed Protective Order of Confidentiality* is incredibly broad, unfairly burdensome, and would serve to extensively protect any material which Defendant wishes. While a valid proprietary interest may justify denying or limiting discovery requested by a direct competitor, Plaintiffs and other similarly victimized patients implanted with defective prosthesis products are not Defendant's business competitor, and thus any proprietary interest can be. *In re Continental Gen. Tire,* 979 S.W. 2d 609 (Tex. 1998); *Automatic Drilling Machines, Inc. v. Miller,* 515 S.W.2d 256, 259 (Tex. 1974) (citing 8 Wigmore, *Evidence [McNaughton rev. 1961] 22.12[3]).* Defendant's proposed order unfairly gives complete authority to Defendant in determining what information is protected, and prohibits the fair sharing of pertinent information with other similar claimants, in violation of public policy.

24.     The sharing of relevant documents discovered in litigation with other plaintiffs in similar suits who commit to the provisions of the protective order is commonly allowed in the interest of fairness. See *In re Ford Motor Co.,* 211 S.W. 3d 295 (Tex. 2006). The U.S. Supreme Court noted in *United States v. Procter & Gamble Co,* 356 U.S. 677 (1958) that modern discovery rules were designed to "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent. "The ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *Garcia v. Peeples,* 734 S.W. 2d 343 (Tex. 1987), quoting *Jampole v. Touchy,* 673 S.W. 2d 569 at 573 (Tex. 1984) Information exchanges between similarly situated litigants enhances full disclosure and efficiency in the trial system. Shared discovery is an effective means

18

to insure full and fair disclosure.   Parties subject to a number of suits concerning the same subject matter are forced to be consistent in their responses by the knowledge that their opponents can compare those responses.   *Buehler v. Whalen,* 374 N.E.2d 460, 467 (Ill. 1977).   In addition to making discovery more truthful, shared discovery makes the system itself more efficient.   The current discovery process forces similarly situated parties to go through the same discovery process time and time again, even though the issues involved are virtually identical.   Benefiting from restrictions on discovery, one party facing a number of adversaries can require his opponents to duplicate another's discovery efforts, even though the opponents share similar discovery needs and will litigate similar issues.   Discovery costs are no small party of the overall trial expense.   Federal courts, recognizing the efficiency thereof, have overwhelmingly embraced the practice of allowing shared discovery.   *Garcia v. Peeples,* 734 S.W. 2d 343 at 347 (Tex. 1987).

25.   The exercise of the court's discretion must be guided by the liberal federal principles favoring disclosure, keeping in mind the need to safeguard confidential information from disclosures harmful to business interests.   *Carpenter Tech. Corp. v. Armco, Inc.,* 132 F.R.D. 24 (E.D. PA. 1991)

Plaintiff's proposed *Protective Order* eradicates the unfair authority granted to Defendant by *Defendant's Proposed Stipulated Protective Order*, including the sole authority to decide what material is "trade secret".   It provides instead for the parties' agreement as to the designation of particular information as "trade secret", with a provision which rightfully gives **the court** the authority to determine whether such designation is proper in the instance of a dispute.   The court's discretion to enter a protective order is "limited by the careful dictates of Rule 26" *Procter &*

*Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 227 (6th Cir. 1996); *see, e.g., Pierson v. Indianapolis power & Light Co.,* 205 F.R.D. 646,645 (S.D. Ind. 2002) (in approving parties' agreement to joint protective order, court would not grant parties *carte blanche* to seal or protect whatever they desired).

      WHEREFORE, premises considered, Plaintiff respectfully requests that the court, upon consideration of the arguments presented by counsel, find Defendant's *Motion for Entry of Protective Order of Confidentiality* to be without merit, and DENY the motion, approving in the alternative Plaintiff's proposed *Protective Order,* attached hereto as Exhibit A.

                                       Respectfully submitted,

                                       HOUSSIERE, DURANT, HOUSSIERE, LLP
                                       By:            /s/
                                                CHARLES R. HOUSSIERE, III
                                            Texas  State Bar No. 10050700
                                            JULIE MAYES HAMRICK
                                            Texas State Bar No. 08878420
                                     1990 Post Oak Blvd., Suite 800
                                     Houston, Texas  77056-3812
                                   Telephone:  (713) 626-3700
                                   Facsimile:  (713) 626-3709
                                   jhamrick@hdhtex.com
                                   ATTORNEYS FOR PLAINTIFFS

                                   KLIPSTINE & HONIGMANN
                                   JAMES W. KLIPSTINE, JR.
                                   1601 N. Turner #400
                                   Hobbs, NM 88240
                                   Telephone: (575) 393-1300
                                   Facsimile: (575) 393-1869
                                   jklipstine @windstream.net
                                   LOCAL COUNSEL FOR PLAINTIFF

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Plaintiff's Brief in Opposition of Defendant's Motion for Entry of Protective Order of Confidentiality* has been filed with the clerk by using this court's ECF electronic filing system, and will be forwarded to the following attorneys through the system and/or by facsimile on September 30, 2009.

Stephen Portell                          Thomas Outler
Harrison, Miller, Pitt                   Rodey, Dickason, Sloan,
Feldman & McAnally, PLC                  Akin & Robb, PA
One South Church Street, Ste. 900        P.O. Box 1888
Tucson, AZ 85701                         Albuquerque, NM 87103
Telephone 520-792-3836                   Telephone 505-768-7256
Fax 520-624-5080                         Fax 505-768-7395


_____
JULIE MAYES HAMRICK